**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAY 15 2025 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CV 25 - 2719

MERLE SCANLON, M.J.

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | COMPLAINT |
| - against – | Civil Action No. 25-_____ |
| YIZHAO HOU, also known as "Harvey Hou", YDH EXPRESS INC., and YDH INT'L INC., | _____, J. _____, M.J. |
| Defendants. | |

Plaintiff, the UNITED STATES OF AMERICA, by and through its undersigned attorneys, hereby alleges as follows:

## INTRODUCTION

1.    The United States brings this action to stop Defendants' long-running fraudulent scheme of mailing parcels with counterfeit mailing labels, which has deprived the United States Postal Service ("USPS" or "Postal Service") of substantial revenues.

2.    Since at least 2022, Defendants Yizhao Hou, also known as Harvey Hou ("Hou"), YDH Express Inc., and YDH Int'l Inc., together with one or more co-conspirators, have been flagrantly committing fraud by shipping thousands of parcels through USPS with counterfeit postage labels, allegedly on behalf of sellers of goods located in China.

3.    Defendants have continued their fraud despite being told no less than eight times by inspectors with the United States Postal Inspection Service ("USPIS") that their parcels had counterfeit labels and could not be mailed, and despite the fact that Hou and one of his employees signed three Voluntary Discontinuances in which they agreed to stop mailing parcels with counterfeit labels. Thus, Defendants were on notice that their customers' parcels bore counterfeit labels and could not be mailed. But Defendants continued to mail such parcels.

4.      As set forth in detail below, USPIS inspected Defendants' facility eight times, and each time USPIS found that the vast majority of inspected parcels had counterfeit or otherwise invalid labels, far outnumbering the small number of parcels with valid labels.

5.      In addition to the parcels that USPIS inspected, Defendants received hundreds of shipments between 2022 and the present that were not inspected, each likely containing thousands of individual parcels.

6.      If the rate of parcels with counterfeit or invalid labels in the non-inspected shipments is similar to the rate of such parcels in the inspected shipments, Defendants' fraud has deprived USPS of millions of dollars of revenue to which it was entitled.

7.      By mailing parcels with counterfeit or invalid labels, allegedly on behalf of their customers in China, Defendants have engaged in mail fraud and conspiracy to commit mail fraud, in violation of 18 U.S.C. §§ 1341 and 1349.

8.      By knowingly mailing parcels with counterfeit labels, Defendants have violated the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*

9.      For the reasons stated herein, the United States brings this action for a temporary restraining order, preliminary and permanent injunctions, and other equitable relief pursuant to the Anti-Fraud Injunction Act, 18 U.S.C. § 1345; to enjoin the Defendants' ongoing commission of mail fraud, in violation of 18 U.S.C. § 1341, and conspiracy to commit mail fraud, in violation of 18 U.S.C. § 1349; and for treble damages and civil penalties under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33.

## JURISDICTION AND VENUE

10.      The Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1345, 28 U.S.C. §§ 1331, 1339, and 1345, and 31 U.S.C. §§ 3730(a) and 3732(a).

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District.

12.     Venue is also proper in this District pursuant to 31 U.S.C. § 3732(a) because this is an action brought under 31 U.S.C. § 3730, at least one of the Defendants resides or transacts business in this District, and the Defendants committed acts proscribed by 31 U.S.C. § 3729 in this District.

## PARTIES

13.     Plaintiff is the United States of America. USPS is an independent establishment of the executive branch of the United States government, which provides postal delivery services in the United States, including for letters and parcels. The United States Postal Inspection Service ("USPIS") is the law enforcement arm of USPS, and it is tasked with supporting and protecting the infrastructure of USPS, as well as enforcing the laws that defend the United States' mail system from illegal use.

14.     Hou owns and controls the business operations of Defendants YDH Express Inc. ("YDH Express") and YDH Int'l Inc. ("YDH Int'l"), and holds himself out as the president of both entities. Upon information and belief, Hou maintains two residences, including one residence in Jamaica, New York and another residence in Temple City, California.

15.     YDH Express is a New York corporation that operates a warehouse located at 167-25 Rockaway Boulevard in Jamaica, New York (the "YDH Express Warehouse"), near John F. Kennedy International Airport ("JFK Airport"). YDH Express provides package processing and distribution services to sellers of goods located in China, who sell to customers in the United States.

16.     YDH Int'l is a California corporation that operates a warehouse located at 11120 Hindry Avenue in Los Angeles, California (the "YDH Int'l Warehouse"), near Los Angeles International Airport ("LAX Airport"). YDH Int'l provides package processing and distribution services to sellers of goods located in China, who sell to customers in the United States.

17.     YDH Express and YDH Int'l are collectively referred to herein as "YDH."

## LEGAL BACKGROUND

### Anti-Fraud Injunction Act

18.     The Anti-Fraud Injunction Act authorizes the United States to "commence a civil action in any Federal court to enjoin" persons who are "violating or about to violate" certain predicate criminal offenses. 18 U.S.C. § 1345(a)(1)(A).

19.     The predicate criminal offenses under the Anti-Fraud Injunction Act include, as relevant here:

a.     18 U.S.C. § 1341 (Frauds and swindles), which provides that "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service . . . is guilty of mail fraud."

b.     18 U.S.C. § 1349 (Attempt and conspiracy), which provides that "[a]ny person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

20.     Under the Anti-Fraud Injunction Act, a district court "may . . . enter such a restraining order or prohibition, or take such other action, as is warranted to prevent a continuing and substantial injury to the United States." 18 U.S.C. § 1345(b).

### False Claims Act

21.     The FCA provides liability for any person who "knowingly makes, uses, or causes to be made or used, a false record . . . material to an obligation to pay or transmit money . . . to the

4

[United States], or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money . . . to the [United States]." 31 U.S.C. § 3729(a)(1)(G).

22.    The FCA also provides liability for any person who "conspires to commit a violation of [§ 3729(a)(1)(G)]." 31 U.S.C. § 3729(a)(1)(C).

23.    For purposes of the FCA, the terms "knowing" and "knowingly":

(A) mean that a person, with respect to information – (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of information; and (B) requires no proof of specific intent to defraud.

31 U.S.C. § 3729(b)(1).

24.    The FCA defines an "obligation" as an "established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment." 31 U.S.C. § 3729(b)(3).

25.    A person who violates the FCA is "liable to the United States Government for a civil penalty . . . plus 3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729(a)(1).

**Postage on Mailings**

26.    The Domestic Mail Manual ("DMM") is a USPS regulation, established under its authority in 39 U.S.C. § 401(2), which sets forth USPS' mailing standards, including postage payment methods and mailer compliance. The DMM is incorporated by reference in the Code of Federal Regulations and deemed published in the Federal Register. *See* 39 C.F.R. §§ 111.1, 211.2(a)(2).

27.     According to the DMM, a mailer is the mail owner or an individual or entity that prepares or presents a mailing to USPS, including those who allow others to use a postage meter or PC Postage. *See* DMM § 607.3.1.2.b.

28.     The DMM provides that a mailer is responsible for proper payment of postage, which must be fully prepaid at the time of mailing. *See* DMM § 604.6.1.

29.     USPS utilizes different types of postage labels, including PC Postage, Electronic Verification System ("eVS") postage, and ePostage. Collectively, these are referred to herein as "electronic postage systems."

30.     All commercial parcels mailed through USPS must use an Intelligent Mail package barcode (formally "IMpb," and referred to in this Complaint as "package barcode"), including parcels with postage printed from electronic postage systems. *See* DMM § 204.2.1.1.a. This package barcode must contain an encoded Mailer ID ("MID"). *See* DMM §§ 204.1.2.1-2, 604.4.3.4.

31.     MIDs are unique six- or nine-digit numeric codes that USPS assigns to specific mailers, agents, or other service providers upon request; MIDs serve as a unique identifier of the mailer, within the package barcode on a USPS label. They may not be used other than by the mailer to whom they were issued. *See* DMM §§ 204.3.3.4, 204.3.4.4; *see also* USPS Postal Pro, Mailer Identifier (MID), https://postalpro.usps.com/mailing/mailer-id (last visited May 14, 2025) (explaining use and purpose of MIDs).

32.     USPS can use the package barcode to determine whether the mailer paid the appropriate postage for the parcel. *See* DMM § 204.1.2.1.c.

33.    eVS postage is a type of electronic postage system that allows mailers to pay for and print labels. It may be used outside the United States if the mailer is a USPS Global Direct Entry ("GDE") customer. GDE customers receive a permit number and MID from USPS.

34.    eVS allows high-volume package mailers and package consolidators to document and pay postage, including special service fees, using electronic manifest files. The files are transmitted over the internet to a USPS database. eVS postage is electronically deducted from the mailer's account.

35.    PC Postage and ePostage are two additional electronic postage systems. USPS authorizes private companies to sell PC Postage and ePostage online. Mailers using these systems also receive MIDs from USPS. However, PC Postage and ePostage may not be printed outside the United States.

36.    USPS will suspend an MID under certain circumstances, including if it learns that the MID has been compromised or used by parties other than the mailer to which it was issued.

37.    In certain circumstances, bad actors can use suspended MIDs to create tracking labels that appear valid and that scan into USPS tracking systems, even though no postage has been paid.

## DEFENDANTS' ONGOING FACILITATATION OF SHIPMENTS OF PACKAGES BEARING COUNTERFEIT POSTAGE LABELS

### Defendants' Business Operations

38.    At all relevant times, Defendants operated warehouses in Jamaica, New York, and Los Angeles, California.

39.    Defendants provide shipping assistance to entities in China that sell goods to buyers in the United States. Defendants' customers reported that the shipments included clothing, jewelry, handbags, phone cases, and shoes.

40.     Defendants pick up boxes of parcels from ports of entry nationwide, including JFK Airport and LAX Airport, that have been mailed from China. These boxes contain parcels that have USPS mailing labels on them. Defendants do not print the labels in the United States; rather, Defendants' customers print and apply the labels to the individual parcels in China, with the name and address of the final recipient within the United States.

41.     After receiving the boxes of parcels, Defendants unpack the boxes and drop the parcels off at USPS locations. USPS then delivers the parcels to the buyers located in the United States.

42.     Defendants generally deposit the parcels at USPS loading docks, without direct contact with USPS employees.

43.     Although YDH Int'l is a California corporation, data obtained from United States Customs and Border Protection ("CBP") indicates that YDH Int'l receives shipments in Jamaica, New York.

**Summary of Defendants' Fraudulent Scheme**

44.     As relevant to this case, Defendants have committed and continue to commit fraud by mailing parcels that bear counterfeit postage labels purporting to be eVS postage, ePostage, or PC Postage.

45.     Defendants, in concert with their customers in China, committed mail fraud and conspired to commit mail fraud against the United States, by knowingly sending parcels with counterfeit mailing labels through USPS, thereby depriving the United States of the value of the postage to which it was entitled.

46.     The mailing labels were counterfeit because they used suspended MIDs to generate tracking numbers that USPS accepted, even though no postage had been paid.

47. Defendants, by depositing the parcels with USPS, are the mailers of the parcels. It is therefore Defendants' responsibility to ensure proper payment of postage, which must be fully prepaid at the time of mailing. *See* DMM § 604.6.1.

48. In violation of this requirement, Defendants mailed thousands of parcels without paying for their postage.

49. As detailed herein, the USPIS repeatedly informed Defendants that they were mailing parcels with counterfeit labels.

50. In addition, Hou signed two voluntary discontinuances in which he agreed to cease mailing parcels with counterfeit labels, and to cease doing business with the customers that the USPIS identified as using counterfeit mailing labels.

51. One of Hou's employees (the "YDH Express Employee") signed a third voluntary discontinuance, also agreeing to cease mailing parcels with counterfeit labels.

52. As a result, Defendants were on notice that they were committing mail fraud, yet Defendants continued to mail parcels with counterfeit labels.

53. At all times, Defendants could have directed their customers to use Hou's USPS account to create labels, could have printed the labels themselves after receiving the parcels, or could have asked USPS to check whether the labels were valid. Yet Defendants instead continued to commit mail fraud.

54. As a result of Defendants' ongoing fraud, the United States has suffered and continues to suffer damages.

## USPIS INSPECTORS REPEATEDLY INTERCEPTED PARCELS WITH COUNTERFEIT POSTAGE AT DEFENDANTS' WAREHOUSES AND OTHER FACILITIES

55. Between June 2022 and April 2024, USPIS inspected YDH warehouses in New York and Los Angeles eight times. During these inspections, USPIS found 8,653 parcels with

counterfeit USPS labels. Defendants intended to mail these parcels and would have done so, but for the USPIS inspections.

### In June 2022, USPIS Finds Parcels Bearing Counterfeit Postage Labels at YDH Express Warehouse in New York

56.     On June 30, 2022, USPIS conducted an inspection at the YDH Express Warehouse (the "June 2022 Inspection").

57.     During the June 2022 Inspection, USPIS Inspectors identified 1,667 parcels bearing counterfeit USPS postage labels.

58.     During the June 2022 Inspection, USPIS Inspectors interviewed the YDH Express Employee at the warehouse, who advised the USPIS Inspectors that he was responsible for picking up parcels from various airlines at JFK Airport, transporting the parcels to the YDH Express Warehouse to be prepared for transport to the local USPS Post Office, and then transporting the parcels to the Post Office.

59.     The YDH Express Employee stated that the parcels bearing counterfeit labels were shipped by air from China to JFK Airport and subsequently transported to the YDH Express Warehouse.

60.     The YDH Express Employee stated he had been delivering parcels to the Post Office for YDH about once a week for 18 months.

61.     The YDH Express Employee showed USPIS Inspectors a recent shipment of two pallets of parcels. Those pallets contained 17 separate boxes of parcels from China.

62.     With consent of the YDH Express Employee and a second employee present in the warehouse, the USPIS Inspectors opened the boxes, inspected the labels, and determined that 1,667 packages contained counterfeit USPS postage, including 240 eVS labels and 1,427 PC postage labels.

63.     The USPIS Inspectors advised the YDH Express Employee that he could not transport the parcels with counterfeit labels to the Post Office.

64.     The YDH Express Employee denied prior knowledge of the counterfeit nature of the postage on the parcels from China. The YDH Employee further stated that the parcels arriving from China already had labels affixed to them when he picked them up from JFK Airport.

65.     The YDH Express Employee informed the USPIS Inspectors that the owner of the company operating out of the YDH Express Warehouse is Hou, and that Hou resides in California for six months of the year and New York for six months of the year.

### July 5, 2022 USPIS Interview of Defendant Hou Concerning Parcels Bearing Counterfeit Postage Labels at YDH Express Warehouse in New York

66.     On July 5, 2022, USPIS Inspectors interviewed Defendant Hou, the owner of Defendants YDH Express and YDH Int'l, at the YDH Express Warehouse.

67.     During the interview, USPIS Inspectors advised Hou that they had identified numerous packages at the YDH Express Warehouse containing counterfeit postage labels during the June 2022 Inspection. Hou confirmed that he is the owner of YDH Express, and told the USPIS Inspectors that the packages were the first shipment being handled by YDH Express for a company in China. After being notified that the packages contained counterfeit postage labels, Hou told the USPIS Inspectors that he spoke to one of his employees who reportedly confirmed that the customer requested Hou to reprint postage labels for the packages from Hou's account with USPS. Hou advised the USPIS Inspectors that he would reprint postage labels accordingly.

68.     A USPIS Inspector instructed Hou to contact him when the packages were relabeled so that USPIS could confirm that the packages contained proper postage. Hou confirmed that he would do so. However, Hou never contacted the USPIS Inspector.

69. Additionally, Hou reviewed and signed a USPIS Voluntary Discontinuance concerning the use of counterfeit postage labels.

70. In the Voluntary Discontinuance, Hou acknowledged, among other things, that items he or his company "mail[ed] . . . packages containing invalid postage labels resulting in a financial loss to the United States Postal Service" and that "continued use of invalid labels would expose [him] and/or [his] company to potential criminal or civil liability."

71. The Voluntary Discontinuance also states as follows: "Having been advised of the facts and circumstances of this situation it is my decision to stop participating in these activities. I further intend to use only legitimate postage labels on all mailings entered to USPS by my company or myself in the future."

### July 11, 2022 USPIS Inspection of Additional Parcels Bearing Counterfeit Postage Labels at YDH Express Warehouse in New York

72. On July 11, 2022, USPIS Inspectors identified eleven pallets of parcels that were delivered from Defendants to USPS' Queens Processing & Distribution Center at 142-02 20th Avenue, Whitestone, New York ("the Queens P&DC").

73. USPIS Inspectors reviewed a sample of the parcels from the 11 pallets and identified 132 parcels with counterfeit USPS priority mail labels.

74. Because USPIS Inspectors intercepted the counterfeit parcels, USPS rejected the parcels and did not mail them.

### July 13, 2022 USPIS Interview of YDH Express Employee Concerning Additional Parcels Bearing Counterfeit Postage Labels at YDH Express Warehouse

75. On July 13, 2022, two days after identifying parcels with counterfeit labels at the Queens P&DC, USPIS Inspectors conducted a second interview of the YDH Express Employee at the YDH Express Warehouse.

76.    The YDH Express Employee claimed that a separate company delivered eleven pallets, likely containing thousands of parcels, from the YDH Express Warehouse to the Queens P&DC for mailing. The YDH Express Employee denied knowledge of the origin of the parcels.

77.    The YDH Express Employee agreed to retrieve the 11 pallets from the Queens P&DC.

78.    While interviewing the YDH Express Employee, USPIS Inspectors observed 13 additional pallets of parcels, likely containing several thousand parcels. The USPIS Inspectors inspected a sampling of the postage and identified both eVS and PC Postage labels. The eVS labels—which made up less than 50 parcels per pallet—were valid; however, the PC Postage labels were confirmed by USPS Inspectors to be counterfeit.

79.    The USPIS Inspectors observed that the parcels with valid eVS labels were placed on top of each of the pallets, concealing the parcels with counterfeit PC Postage labels.

80.    The inspectors advised the YDH Express Employee that the eVS-labeled parcels could be shipped through USPS but the PC Postage-labeled parcels could not.

81.    The YDH Express Employee agreed to separate the parcels with counterfeit PC Postage labels from the eVS parcels prior to delivering the pallets to USPS.

**July 26 and 27, 2022 USPIS Mail Review**

82.    On July 26 and 27, 2022, USPIS Inspectors interviewed the YDH Express Employee and conducted an inspection at the YDH Express Warehouse.

83.    USPIS Inspectors informed the YDH Express Employee that previous mailings from YDH Express that were dropped off at the Queens P&DC contained parcels with counterfeit postage labels.

84.    The YDH Express Employee stated that he understood and signed a Voluntary Discontinuance.

85.     In the Voluntary Discontinuance, the YDH Express Employee acknowledged, among other things, that items mailed by him or his company "displayed counterfeit postage labels, resulting in financial losses to the United States Postal Service"; that the use, sale, possession or manufacture of counterfeit postage is illegal; that he and his company "may be enjoined against further mailings by a federal judge pursuant to 18 USC § 1345."

86.     The Voluntary Discontinuance also states as follows: "From this date, I will cease using counterfeit or otherwise invalid postage. My company any I will use only legitimate postage labels on all items mailed via USPS."

87.     During this interview, USPIS Inspectors observed approximately 36 boxes of parcels at the YDH Express Warehouse. On July 26 and 27, USPIS inspected the parcels in these boxes, and determined that there were 4,460 parcels, all of which bore counterfeit labels.

88.     USPIS then obtained an order from CBP requiring the parcels to be returned to China.

### August 4, 2022 USPIS Mail Review

89.     On August 4, 2022, the CBP told USPIS that boxes of parcels addressed to YDH had entered the country. As a result, USPIS Inspectors conducted an inspection of 23 boxes of parcels at a third-party warehouse at JFK Airport.

90.     The boxes contained 1,947 parcels. Of these, USPIS Inspectors determined that 1,807 bore counterfeit USPS mailing labels.

91.     The remaining 140 parcels bore paid-for ePostage labels. However, these ePostage labels were invalid because ePostage shipments must originate from within the United States.

92.     Thus, one hundred percent of the shipment bore counterfeit or invalid labels. As a result of this inspection, the CBP returned the 23 boxes of parcels to China.

**August 10, 2022 USPIS Interview of Defendant Hou Concerning Parcels Bearing Counterfeit Postage Labels at YDH Express Warehouse in New York**

93.     On August 10, 2022, USPIS Inspectors returned to the YDH Express Warehouse with a USPIS Revenue Fraud Analyst to interview Hou.

94.     Hou stated that YDH Express is a logistics company and that any mail it receives contains postage labels printed by online sellers in China.

95.     Hou also stated that he uses customs brokers based in Chicago and New York for shipments handled by YDH, and that he uses a New York-based bank account to receive payments for logistics services by international wire transfer for both YDH Express and YDH Int'l.

96.     Hou denied knowledge of the counterfeit nature of the postage labels on the parcels in the YDH Express Warehouse.

97.     Hou confirmed that he operates two additional businesses: YDH Int'l Inc. which operates a cargo warehouse at 11120 Hindry Avenue in Los Angeles, California, and Jupiter Warehouse Distribution, Inc., which handles large packages for the private interstate carrier United Parcel Service ("UPS") through a warehouse located at 300 W. Artesia Boulevard in Compton, California.

98.     Further USPIS investigation revealed that some shipments addressed to YDH also consist of UPS parcels.

99.     Hou stated that he has approximately five or six customers in China from which his companies receive mail, and that the logistics business does not print labels in any of their warehouses. Hou claimed that, instead, his customers use his eVS account to print postage labels.

100.    However, this is not true for the counterfeit labels. Those labels used a suspended MID. But if they had been printed from Hou's eVS account, they would have used his valid MID.

101. A USPIS Inspector instructed Hou to email him with the names of YDH Express' customers in China who provide mailings with counterfeit postage labels.

102. At the conclusion of the interview, Hou signed another Voluntary Discontinuance.

103. In the Voluntary Discontinuance, Hou acknowledged, among other things, that items mailed by him or his company "displayed counterfeit postage labels, resulting in financial losses to the United States Postal Service"; that the use, sale, possession or manufacture of counterfeit postage is illegal; that he and his company "may be enjoined against further mailings by a federal judge pursuant to 18 USC § 1345."

104. The Voluntary Discontinuance also states as follows: "From this date, I will cease using counterfeit or otherwise invalid postage. My company any I will use only legitimate postage labels on all items mailed via USPS."

105. Hou never sent the names of YDH Express' customers in China to the USPIS Inspector.

### The United States Serves a Civil Investigative Demand on Hou

106. On or about September 21, 2022, the United States Department of Justice served a Civil Investigative Demand ("CID") on Hou at the YDH Express Warehouse.

107. The CID instructed Hou to provide documents and information related to his businesses, including YDH Express and YDH Int'l, to the U.S. Attorney's Office for the Eastern District of New York.

108. On November 5, 2022, Hou, through counsel, stated in an email the following:

YDH International Inc. and YDH Express are logistic and trucking companies. [Their] business is only to retainer [*sic*] custom broker to clear the custom, pick up the shipments from the airline terminal, and deliver to the warehouses designated by the customers. Upon the inspection of the USPS inspectors in September, my client immediately stopped the services.

16

109.    Hou, through counsel, later produced documents in response to some of the document requests in the CID, and provided a list of three customers with whom Hou terminated business after October 31, 2022.

### Three Follow-Up Inspections Reveal That the YDH Express Warehouse in New York Was Emptied

110.    A USPIS Inspector conducted three follow-up inspections at the YDH Express Warehouse on December 14, 2022; January 30, 2023; and February 9, 2023. On all three dates, the YDH Express Warehouse was completely empty.

### A March 2023 Inspection of the YDH Int'l Warehouse Reveals That Hou Did Not, In Fact, Terminate Business With Chinese Companies That Ship Parcels Bearing Counterfeit Labels; Instead, He Shifted Some Operations to Los Angeles

111.    On March 31, 2023, a USPIS Inspector inspected YDH Int'l Warehouse in Los Angeles, California.

112.    The USPIS Inspector observed parcels bearing USPS postage labels, which the Inspector recognized as having characteristics of counterfeit postage.

113.    A USPIS Revenue Fraud Analyst then reviewed the labels of seven parcels identified by the USPIS Inspector and confirmed that the labels on all seven parcels were counterfeit.

114.    The USPIS Inspector advised an employee at the warehouse, who refused to identify himself, that labels on the parcels were counterfeit and that he could not take those parcels to USPS for mailing. The individual stated that he understood.

### USPIS Inspects the YDH Express Warehouse in New York in October 2023 and Finds 270 Parcels With Counterfeit USPS Labels

115.    On October 23, 2023, USPIS Inspectors conducted an inspection at the YDH Express Warehouse.

116. The USPIS Inspectors reviewed one box of parcels with USPS Ground labels, and one box of parcels with USPS Priority Mail labels.

117. The box of USPS Ground parcels contained approximately 250 parcels and the box of USPS Priority Mail parcels contained approximately 20 parcels. All of the parcels in both boxes, approximately 270 parcels in all, bore counterfeit postage labels.

118. CBP then held the remaining parcels in the shipment, which had not yet been released to YDH, and which consisted of approximately 95 boxes. These boxes contained a total of 8,684 parcels.

### USPIS Inspects the YDH Express Warehouse in New York in April 2024 and Finds 170 Parcels with Counterfeit Labels

119. On April 3, 2024, USPIS Inspectors conducted an inspection at the YDH Express Warehouse.

120. The Inspectors reviewed one box containing parcels to be shipped by USPS Ground services, and one box containing USPS Priority Mail parcels.

121. The box of USPS Ground parcels contained approximately 120 parcels and the box of USPS Priority Mail parcels contained approximately 50 parcels. All of the parcels in both boxes, totaling approximately 170 parcels, bore counterfeit postage labels.

122. USPIS Inspectors then told the YDH Express Employee that the parcels could not be delivered to USPS. The YDH Express Employee stated that he understood.

123. CBP then had the remaining parcels in the shipment placed on hold, which consisted of approximately 58 additional boxes.

### CBP Data Shows That Defendants Received Hundreds of Shipments Between 2022 and Present, Including Over One Hundred in March 2025 Alone

124. CBP data reflects that YDH Express and YDH Int'l have received hundreds of shipments between 2022 and the present.

125.    This CBP data shows that YDH Express and YDH Int'l received over one hundred shipments in March 2025 alone.

126.    This CBP data also reflects that shipments addressed to YDH Int'l were sent to the YDH Express Warehouse in New York, even though YDH Int'l is a California corporation that operates a warehouse in Los Angeles.

127.    Upon information and belief, these shipments contained additional parcels with counterfeit labels that USPS was not able to intercept.

128.    Upon information and belief, Defendants mailed the parcels from these shipments, including parcels with counterfeit labels, causing injury to USPS.

## YDH Has Again Shifted Operations, Likely to Evade Detection of Its Ongoing Fraud

129.    In 2025, YDH Int'l abruptly stopped using its Los Angeles warehouse.

130.    Yet, Defendants continued to receive shipments of parcels at ports of entry nationwide, including those in Los Angeles and New York.

131.    In fact, YDH Int'l, despite being a California corporation that operates a warehouse in Los Angeles, has received parcels in New York as recently as March 2025.

132.    The only address CBP was able to locate for YDH Int'l is a house located in New Hampshire.

133.    Given that shipments for YDH come to LAX and JFK airports, and contain many thousands of parcels, Defendants are obviously not using a residence for their high-volume operation. Instead, given Defendants' past behavior, it is likely that they have again moved their operations in order to evade detection by USPIS.

## FIRST CLAIM FOR RELIEF
### Injunction Against Fraud – 18 U.S.C. § 1345
### (Violation of 18 U.S.C. § 1341)

134.    The United States realleges and incorporates by reference paragraphs 1 through 133 of this Complaint as though fully set forth herein.

135.    By reason of the conduct described herein, Defendants violated, are violating, and are about to violate 18 U.S.C. § 1341 by executing schemes or artifices to defraud, or for obtaining money or property by means of false or fraudulent pretenses with the intent to defraud, and in so doing, transmitting or causing to be transmitted by means of the United States mail.

136.    Upon a showing that Defendants are committing or about to commit mail fraud, the United States is entitled, under 18 U.S.C. § 1345, to a temporary restraining order, a preliminary injunction, and a permanent injunction restraining all future fraudulent conduct and any other action that this Court deems just in order to prevent a continuing and substantial injury to the United States.

137.    As a result of the foregoing, Defendants' conduct should be enjoined pursuant to 18 U.S.C. § 1345.

## SECOND CLAIM FOR RELIEF
### Injunction Against Fraud – 18 U.S.C. § 1345
### (Violation of 18 U.S.C. § 1349)

138.    The United States realleges and incorporates by reference paragraphs 1 through 133 of this Complaint as though fully set forth herein.

139.    By reason of the conduct described herein, Defendants violated, are violating, and are about to violate 18 U.S.C. § 1349 by conspiring to execute schemes or artifices to defraud, or for obtaining money or property by means of false or fraudulent pretenses with the intent to

defraud, and in so doing, transmitting or causing to be transmitted by means of the United States mail.

140.    Defendants have engaged in multiple overt acts in furtherance of their conspiracy to defraud, including but not limited to their depositing for mailing at the Queens P&DC at least 132 parcels with counterfeit mailing labels, on or about July 11, 2022.

141.    Upon a showing that Defendants are committing or about to commit conspiracy to commit mail fraud, the United States is entitled, under 18 U.S.C. § 1345, to a temporary restraining order, a preliminary injunction, and a permanent injunction restraining all future fraudulent conduct and any other action that this Court deems just in order to prevent a continuing and substantial injury to the United States.

142.    As a result of the foregoing, Defendants' conduct should be enjoined pursuant to 18 U.S.C. § 1345.

### THIRD CLAIM FOR RELIEF
#### Violation of the False Claims Act – 31 U.S.C. § 3729(a)(1)(G)
#### (Treble Damages and Civil Penalties)

143.    The United States realleges and incorporates by reference paragraphs 1 through 133 of this Complaint as though fully set forth herein.

144.    By reason of the conduct described herein, Defendants have knowingly made, used, or caused to be made or used, a false record material to an obligation to pay or transmit money to the United States, and/or knowingly concealed and improperly avoided an obligation to pay or transmit money to the United States.

145.    For each violation of 31 U.S.C. § 3729(a)(1)(G), Defendants are liable for civil penalties of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil

Penalties Inflation Adjustment Act of 1990, Pub. L. No. 101-410, plus three times the amount of damages sustained by the United States because of Defendants' acts.

### FOURTH CLAIM FOR RELIEF
### Violation of the False Claims Act – 31 U.S.C. § 3729(a)(1)(C)
### (Treble Damages and Civil Penalties)

146.    The United States realleges and incorporates by reference paragraphs 1 through 133 of this Complaint as though fully set forth herein.

147.    By reason of the conduct described herein, Defendants have conspired to knowingly make, use, or cause to be made or used, a false record material to an obligation to pay or transmit money to the United States, or conspiring to knowingly conceal and improperly avoid an obligation to pay or transmit money to the United States.

148.    For each violation of 31 U.S.C. § 3729(a)(1)(C), Defendants are liable for civil penalties of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. No. 101-410, plus three times the amount of damages sustained by the United States because of Defendants' acts.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff United States of America requests of the Court the following relief:

A.    That the Court issue an order, pursuant to 18 U.S.C. § 1345, pending a hearing and determination on the United States' application for a preliminary injunction, that Defendants, their agents, officers and employees, and all other persons and entities in active concert or participation with them are required to preserve all documents related to their mailing of parcels through USPS or any private interstate carrier, and are temporarily restrained from:

i.    committing mail fraud, as defined by 18 U.S.C. § 1341;

      ii.     conspiring to commit mail fraud, as defined by 18 U.S.C. § 1349; and

      iii.    using the services of USPS to mail parcels.

B.     That the Court further order, pursuant to 18 U.S.C. § 1345, that within two days from Defendants' receipt of the Court's Temporary Restraining Order and Order to Show Cause, Defendants shall provide copies of the Temporary Restraining Order and Order to Show Cause to all customers with whom they do business, informing them that they are subject to the Temporary Restraining Order as an entity in active concert or participation with Defendants, and within eight days from Defendants' receipt of the Temporary Restraining Order and Order to Show Cause, Defendants shall provide proof of such notice to the Court and the United States, including the name and addresses of the entities and/or individuals to whom the notice was sent, how the notice was sent, and when the notice was sent.

C.     That the Court issue a preliminary injunction on the same basis and to the same effect, and also permit expedited discovery, in advance of a preliminary injunction hearing, related to Defendants' mailing of parcels through USPS, including all manifests and related documentation of the parcels that Defendants mailed from January 1, 2022 to present, as well as information about all businesses in which Hou has an ownership or control interest; the locations of Defendants' businesses; documents concerning the businesses' formation, operation, and ownership; a list of all employees, contractors, and owners of Defendants' businesses.

D.     That the Court issue a permanent injunction on the same basis and to the same effect.

E.     That the Court enter judgment against Defendants for treble damages and penalties under the FCA, together with post-judgment interest and all allowable costs and attorneys' fees.

.

F.      That the Court order such other and further relief as the Court shall deem just and

proper.

Dated: Brooklyn, New York
       May 15, 2025

                                        JOSEPH NOCELLA, JR.
                                        United States Attorney
                                        Eastern District of New York
                                        271 Cadman Plaza East
                                        Brooklyn, New York 11201

                            By:         _____/s/_____
                                        David A. Cooper
                                        Logan J. Gowdicott
                                        Assistant United States Attorneys
                                        (718) 254-7000